IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| ISABEL ARANA, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-3193-BN |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Isabel Arana seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).

For the reasons explained below, the hearing decision is affirmed.

## **Background**

Mr. Arana alleges that he is disabled as a result of a spine and shoulder injury. After his application for disability insurance benefits was denied initially and on reconsideration, Mr. Arana requested a hearing before an administrative law judge ("ALJ"). That hearing was held on May 27, 2015. *See* Dkt. No. 12 (Administrative Record ["Tr."]) at 48-84. At the time of the hearing, Mr. Arana was 57 years old. He is a high school graduate and has past work experience as a general construction worker. Mr. Arana has not engaged in substantial gainful activity since June 25, 2012.

The ALJ found that Mr. Arana was not disabled and therefore not entitled to disability benefits. *See* Tr. at 34-42 (ALJ's Decision). Although the medical evidence established that Mr. Arana suffered from thoracic and lumbar degenerative disc

disease, history of right rib fracture, ventral hernia status post hernia repair, and obesity, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Mr. Arana had the residual functional capacity to perform a limited range of medium work but could not return his past relevant employment. Relying on a vocational expert's testimony, the ALJ found that Mr. Arana was capable of working as a dining room attendant, hand packager, and cleaner, industrial – jobs that exist in significant numbers in the national economy. Given his age, education, and exertional capacity for medium work, the ALJ determined that Mr. Arana was not disabled under the Medical-Vocational Guidelines.

Mr. Arana appealed that decision to the Appeals Council. The Council affirmed.

In a single ground for relief, Mr. Arana contends that the assessment of his residual functional capacity is not supported by substantial evidence and results from reversible legal error.

The Court determines that the hearing decision is affirmed in all respects.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

2

as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits, a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment

3

listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not

supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Mr. Arana contends that the ALJ's residual functional capacity ("RFC") finding is not supported by substantial evidence because the ALJ failed to consider all limitations relating to his impairments or to incorporate those limitations into the RFC.

When determining a claimant's RFC, the ALJ will consider the limiting effects of all of the claimant's impairments, even those that are not severe. *See* 20 C.F.R. § 404.1545(e). The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC refers to the most that a claimant is able to do despite his physical and mental limitations. *See* 20 C.F.R. §§ 404.1545(a); 416.945(a). The RFC is considered by the ALJ, along with the claimant's age, education, and work

experience, in determining whether a claimant can work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ found that Mr. Arana had the severe impairments of thoracic and lumbar degenerative disc disease, history of right rib fracture, ventral hernia status post hernia repair and obesity, and the non-severe impairments of right shoulder pain, hypertension, idiopathic thrombocytopenia purpura, major depressive disorder, and anxiety disorder. *See* Tr. at 36.

The ALJ then found that Mr. Arana had the RFC to perform a limited range of medium work: he could lift and carry 50 pounds occasionally and 25 pounds frequently; he could stand and walk for six hours in an eight-hour workday and sit six hours in an eight-hour workday; he could not work around industrial hazards or unprotected heights; and he could have occasional exposure to vibration. *See* Tr. at 38. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighting up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. *See* 20 C.F.R. § 404.1567(c); SSR 83-10, 1983 WL 31241, at *6 (Jan. 31, 1983).

Mr. Arana argues that the record demonstrates that his impairments are significantly more limiting than accounted for by the ALJ.

First, Mr. Arana argues that his limitations restrict his lifting, carrying, sitting, standing, and walking to such an extent that he is unable to perform medium work on a sustained basis.

Mr. Arana asserts that he experiences body pain and lower back pain that affect his ability to sit, stand, walk, and lift and carry and shoulder and neck pain that affect his ability to lift, carry and reach. In a Function Report, Mr. Arana stated that he is limited in his ability to work because he is unable to lift, bend, and stretch due to back swelling, neck numbness, and shoulder numbness. He also stated that he can lift ten pounds, walk less than one-half mile in twenty minutes, stand for thirty minutes, and sit for thirty minutes. *See* Tr. at 221, 226. At the hearing, he testified that he has shoulder, neck, and lower back pain. He testified that tingling in his shoulder and numbness in his neck limit his driving with both hands on the wheel after thirty minutes of driving. Reaching, bending, pushing, or pulling hurt his back, and his back pain is aggravated by sitting on a hard bench, mowing the yard, washing the car, or doing dishes. His shoulder pain is aggravated when he "uses his strength" or does dishes for more than thirty minutes. He further testified that he tries not to take medication for the pain and only takes medication when the pain is so bad he can't stand it. *See* Tr. at 54, 58-62.

Mr. Arana also asserts that, on multiple occasions from 2012 through 2015, he was restricted to lifting ten pounds or less and that there is no indication that he was ever released from this restriction. He directs the Court to workers' compensation evaluations dated May 7, 2012; May 21, 2012; May 30, 2012; and June 14, 2012. In

7

Part III of those evaluations, Mr. Arana is restricted from lifting or carrying objects more than 10 pounds for more than two hours per day. *See* Tr. at 279, 281, 283, 285. The workers' compensation evaluations also state the dates on which Mr. Arana will be allowed to return to work and the dates the restrictions end. *See id.* at 279, 281, 283, 285 ("The injured employee's medical condition resulting from the workers' compensation injury ... will allow the employ to return to work as of [date] with the restrictions identified in Part III, which are expected to last through [date].") Mr. Arana also directs the Court to an April 13, 2012 consulting physician's report stating that "the patient ... states ... that he is back at light duty with a 10-pound restriction." *Id.* at 309. And Mr. Arana directs the Court to hospital records dated October 29, 2014 mentioning unspecified lifting restrictions after hernia surgery and a post-operative note stating a restriction of no lifting more than ten pounds for another four weeks. *See id.* at 540, 553, 576, 589. Contrary to Mr. Arana's allegations, the ten-pound lifting restrictions were for a limited time.

Mr. Arana also asserts that the medical records show that he made multiple complaints of pain and swelling and that there have been objective findings during physical examination for tenderness to his neck, thoracic wall, thoracic spine, lumbar spine, shoulder, edema to his lower extremities, and hernia. *See id.* at 282, 292, 372, 373, 374, 376, 378, 379, 380, 383, 386, 387, 388, 395, 397, 398, 400, 448, 450, 455, 457, 471, 474, 498, 499, 525, 527, 540, 552, 553, 563-64, 581, 588.

And Mr. Arana asserts that his complaints are supported by abnormal radiological findings. On March 1, 2012, a thoracic spine x-ray showed anterior and

extending right laterally large 2 cm nodular area of osteophytic bone at T10-11. *See id.* at 303. On March 23, 2012, a chest CT showed an old right rib fracture and mild thoracic spondylosis. *See id.* at 295. On April 16, 2012, a spine x-ray showed minimal degenerative sponylosis from L1-L2 through L5-S1 and mild degenerative facet joint hypertrophy from L1-L2 through L5-S1. *See id.* at 307. On October 18, 2013, a right shoulder x-ray showed minimal degenerative hypertrophy at the right acromioclavicular and glenohumeral joints, and a lumbar spine x-ray showed minimal degenerative spondylosis from L1-L2 through L5-S1 and mild degenerative facet joint hypertrophy from L1-L2 through L5-Sa1. *See id.* at 472-73. And a September 30, 2014 hospital record notes that a lumbar spine x-ray showed degenerative changes to the lumbar spine, a chest x-ray showed an old healed rib fracture, thickening of the stomach wall, and mile tortuosity of the aorta, and an abdominal ultrasound showed fat containing a reducible supraumbilical ventral hernia. *See id.* at 528-30.

Mr. Arana also asserts that he has been diagnosed with thoracic and lumbar spinal impairments, rib fracture, neuropathy, chest pain, abdominal pain to the left lower quadrant, and a hernia. And he asserts that he underwent physical therapy due to back and neck pain, and the physical therapy diagnosis was muscle imbalance, mechanical spine pain, postural dysfunction, segmental hypomobility, and avoidance behavior due to pain. *See id.* at 279, 280, 281, 281, 283, 285, 309, 342, 369-70, 372-74, 376-77, 379, 383, 384, 387, 388, 392, 394, 395-96, 398, 399, 401, 406, 408, 472, 527, 538, 540, 553, 566-69, 586-89, 603, 606, 617.

9

According to Mr. Arana, the evidence in the record shows that he experiences chronic pain to multiple parts of his body that prevent him from performing the requirements of medium work. "Pain constitutes a disabling condition when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir 1994) (quoting *Selders v. Sullivan*, 914 F.2d 614, 618-19, 5th Cir. 1990)). Not all pain is disabling, and subjective pain need not be credited over conflicting medical evidence. *See Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). "It is important to note that the test for disability under the Social Security Act is not satisfied merely because Plaintiff cannot work without some pain or discomfort." *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983).

Mr. Arana also points to numerous diagnoses of different conditions in the record. But the mere diagnosis of an impairment or mention of a condition in the medical records does not establish a disabling impairment – that is, one that is more than a slight abnormality. *See, e.g., Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (claimant may not establish disability simply by pointing to a medical diagnosis and asserting that it must necessarily impact the ability to work); *see also Johnson v. Sullivan*, 894 F.2d 683, 685 (5th Cir. 1990). And, tellingly, Mr. Arana does not suggest additional limitations based on the alleged symptoms and diagnoses.

Here, the ALJ noted that, in June 2012, despite reported muscle pain, the primary care physician stated that Mr. Arana had a normal gait, no signs of inflammation, and normal range of motion on extremities and spine. *See* Tr. at 39, 400-01. The ALJ also considered an October 2013 consultative examination that showed

that Mr. Arana had a decreased range of motion in the cervical and lumbar spine but had normal grip strength, normal muscle strength in all extremities, normal deep tendon reflexes in all extremities, normal neurological findings, and no muscle spasms or tenderness in the cervical and lumbar spine. *See id.* at 40, 471-72. In addition, x-rays showed only minimal degenerative spondylosis at L1-L2 through L5-S1, minimal degenerative hypertrophy at the right acromioclavicular and glenerohumeral joints, and mild degenerative fact joint hypertrophy at L1-L2 through L5-S-1. *See id.* at 40, 472.

The ALJ noted that Mr. Arana had a significant gap in treatment between September 2013 and September 2014, when he had perumbilical hernia pain, which was repaired in February 2014. *See id.* at 40, 526, 566. The lack of need for medical treatment may be considered by the ALJ, in conjunction with other factors, in evaluating a claimant's condition. *See Villa v. Sullivan*, 895 F2d 1019, 1024 (5th Cir. 1990).

The ALJ noted Mr. Arana's post-operative instructions not to lift over fifteen pounds and not to engage in strenuous activity but found that those were short-term restrictions that were not indicative of his physical limitations. *See* Tr. at 40-41, 569. The ALJ observed that the record showed minimal treatment for pain complaints after surgery because Mr. Arana reported that he rarely took Tylenol #3. *See id.* at 41, 607. The lack of need for an inordinate amount of medication is relevant to ascertain a claimant's credibility. *See Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991).

The ALJ also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527; SSR 96-2p, 1996 WL 374188; SSR 96-5p, 1996 WL 374183; SSR 96-6p, 1996 WL 374180; and SSR 06-03p, 2006 WL 2329939. *See* Tr. at 38, 41. The ALJ considered the opinions of the state agency medical consultants who found that Mr. Arana could perform medium work, afforded those opinions great weight, and incorporated those opinions into the RFC finding. *See id.* at 38, 41, 87-88, 99.

Second, Mr. Arana argues that the record supports mental limitations due to depressions and anxiety, specifically problems with anger and paranoia affecting his social functioning abilities, concentration and memory problems, none of which were accommodated by the ALJ. To support this argument, Mr. Arana simply cites to the record without explanation. *See id.* at 63-66 (Hearing Transcript), 226-27 (Adult Function Report), 369-70, 374, 382, 392, 394 (treating physician notes that list "anxiety state unspecified" in the "problem list"), 455-56, 458-59, 466-67 (treating physician notes with a clinical assessment of "major depressive disorder, single episode, moderate degree"), 598-99, 603, 606, 606, 609, 617, 629-30, 636-38, 645 (hospital records with diagnoses of depression, anxiety, severe depression and severe anxiety), and 620, 621, 623, 625-27 (hospital records noting paranoia and hallucinations).

The ALJ noted that, over the three-year period since the alleged onset date, Mr. Arana had two encounters for depressive or anxious symptoms. *See id.* at 37. The record shows that Mr. Arana was in good spirits in August 2012, December 2012, and March 2013 and showed no signs of anxiety or depression. *See id.* at 374, 382, 392. In September 2013, Mr. Arana reported that he was depressed due to pain and an

12

inability to find work. *See id.* at 37, 457, 459. The ALJ noted that, at a consultative examination in October 2013, Mr. Arana exhibited no evidence of a thought disorder, did not have significantly impaired memory, and had fair judgment and insight. *See id.* at 37, 466. In May 2015, Mr. Arana was diagnosed with anxiety after he reported that he was fearful about going into public and was prescribed an antidepressant medication, which he reported at the hearing that he had not yet started. *See id.* at 37, 63, 607. The ALJ found that these mental impairments were not severe and caused only mild restrictions on Mr. Arana's activities of daily living, maintaining social function, and maintaining concentration, persistence, and pace. *See id.* at 37 (finding mild limitation in activities of daily living, social functioning and concentration, persistence or pace, and no episodes of decompensation which have been of extended duration).

The ALJ also considered the state agency psychological consultant's opinion that Mr. Arana did not have a severe mental impairment and accorded the opinion great weight "as the minimal and intermittent mental health treatment supports a finding that the claimant's depression and anxiety cause him no more than minimal functional limitations." *Id.* at 37, 99; *see also Vaughan v. Colvin*, No. 3:13-cv-2924-BH, 2014 WL 4907235, at *11 (N.D. Tex. Sept. 30, 2014) (finding no error when the ALJ found that the plaintiff's mental impairments were non-severe because the conditions appeared "sporadically" in the record and no examining physician imposed any limitations as a result of the plaintiff's conditions); *Sweeten v. Astrue*, No. 3:11-cv-934-G-BH, 2012 WL 3731081, at *9 (N.D. Tex. Aug. 13, 2012) (finding no error in the ALJ's failure to

13

consider anxiety as a severe impairment where the medical records showed only an occasional display of symptoms and a lack of treatment for anxiety), *rec. adopted*, 2012 WL 3735884 (N.D. Tex. Aug. 29, 2012).

Mr. Arana did not identify any additional work-related limitations resulting from his depression and anxiety that the ALJ should have considered in assessing his claim. Without such additional limitations, any failure by the ALJ to specifically consider depression and anxiety as additional impairments or to include limitations based on depression and anxiety could not have prejudiced Mr. Arana. *See Heck v. Colvin*, 674 F. App'x 411, 414 (5th Cir. 2017).

Mr. Arana finally argues that he has been prejudiced by the ALJ's reliance on a faulty RFC that did not accommodate all of his impairments supported by the record and erroneously finding that he is capable of performing other work in the national economy based on a flawed hypothetical question to the vocational expert that did not include all of Mr. Arana's limitations. To support a determination of not disabled, the hypothetical question opposed to the vocational expert by the ALJ must reasonably incorporate all disabilities of the claimant recognized by the ALJ, and the claimant must be afforded the opportunity to correct deficiencies in the ALJ's questions. *See Boyd v. Apfel*. 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Here, the hypothetical question properly incorporated all of Mr. Arana's limitations supported by the record and recognized by the ALJ. *See* Tr. at 73-80; *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002).

## Conclusion

The hearing decision is affirmed in all respects.

SO ORDERED.

DATED: March 27, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE